## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

PAULA M.,[1]

        Plaintiff,

                                    **Case No. 1:21-cv-1313**

    v.                           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

        Defendant.

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Paula M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

### I.    PROCEDURAL HISTORY

On April 27, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since January 1, 2010. R. 140, 151, 248−49. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 152−56, 162−64. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 165−66. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on June 13, 2019, at which Plaintiff, who was represented by counsel, testified. R. 78−127. That ALJ also held a second hearing on November 15, 2019, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 47−77. In a decision dated December 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2010, her alleged disability onset date, through September 30, 2015, the date on which Plaintiff was last insured. R. 15−40. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 8, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 21, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On April 20, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

###### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on the date on which she was last insured. R. 39. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2010, her alleged disability onset date, and September 30, 2015, the date on which she was last insured. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia; lumbar degenerative disc disease; cervical degenerative disc disease; and degenerative disc disease of the cervical spine. R. 18. The ALJ also found that the following alleged impairments were not severe: JAK-2 mutation, right plantar fasciitis, osteopenia, diverticulitis/irritable bowel syndrome, menorrhagia/ovarian cyst/dysfunctional uterine bleeding, migraine headaches, left shoulder pain, insomnia, trigeminal neuralgia, depressive disorder, and anxiety disorder.  R. 18−26. The ALJ further found that Plaintiff's "ailments" of wart, hydronephrosis, and trochanteric bursitis "are either not sufficient, or established as an impairment, or are not shown to be severe functionally or durationally, or affect the claimant's ability to perform work activities." R. 24.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 26−28.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 28−38. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a customer service representative/financial institution. R. 38.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs−*e. g.*, approximately 700,000 jobs as a hand packager; approximately 255,000 jobs as an assembler; approximately 1,000,000 jobs as an information clerk−existed in the national economy and could be performed by Plaintiff. R. 39−40. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2010, her alleged disability onset date, through September 30, 2015, the date on which she was last insured. R. 40.

Plaintiff disagrees with the ALJ's findings at steps four and five, and challenges the constitutionality of the Commissioner's appointment; she asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15.

## IV.     DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's RFC determination because, among other things, the ALJ failed to properly consider the opinion of an examining physician, Miguel Martinez, M.D. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 19−23. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [the claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b), (c); *see also* SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ also must consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations in the RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

9

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps or stairs, occasionally climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl. She could frequently finger and handle and occasionally reach overhead. She should have no exposure to workplace hazards such as moving machinery or unprotected heights. She could perform simple, routine tasks.

R. 28. In reaching this determination, the ALJ considered the opinion of Miguel Martinez, M.D., R. 38, which Plaintiff challenges. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 19−23.

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[4] As previously noted, Plaintiff's claim was filed on April 27, 2017.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In this case, Dr. Martinez completed a one-page, check-the-box, and fill-in-the-blank form entitled, "Ambrosia of New Jersey Physical Examination Form" on June 3, 2015. R. 819. Dr. Martinez indicated that he had evaluated Plaintiff in connection with a five-week internship sought by Plaintiff. *Id*. Under the title "Physical Demands of the Job," Dr. Martinez opined as to Plaintiff's limitations, if any, relating to the following tasks:

| Physical Tasks | 0-25% | 26-50% | 51-75% | 76-100% |
|----------------|-------|--------|--------|---------|
| Standing | | X | | |
| Walking | | X | | |
| Bending | X | | | |
| Crouching | X | | | |
| Carrying | X | | | |
| Pushing | X | | | |

| Pulling | X | | | |
|---|---|---|---|---|
| Sitting | | | X | |
| Reaching | X | | | |
| Reading | | | | X |
| Driving | X | | | |

**LIFTING/LOWERING**

| Light (1-20 lbs) | | X | | |
|---|---|---|---|---|
| Medium (21-50lbs) | | X | | |
| Heavy (51+lbs) | X | | | |

**MENTAL DEMANDS**

| Psychological | High | Medium | Low |
|---|---|---|---|
| Mental Stress | | X | |
| Work with Others | | X | |

*Id*. In response to the question whether Plaintiff was physically fit and capable of meeting the demands of the job, Dr. Martinez checked the box marked "Yes." *Id*.

When fashioning the RFC at step four, the ALJ concluded that portions of Dr. Martinez's opinion were not persuasive but that other portions of that opinion were persuasive, reasoning as follows:

> Miguel Martinez, M.D., concluded on June 3, 2015 that the claimant could sit for up to 75 percent of the work day, stand and walk and lift up to medium weights for up to 50 percent of the work day, bend, crouch, push, pull, reach and drive up to 25

13

percent of the work day (Exhibit 13F). She would have medium demands mentally with regard to stress and working with others.

The undersigned finds Dr. Martinez' opinion that the claimant could lift medium weight 4 hours in an 8 hour work day to be not persuasive (Exhibit 13F). Dr. Martinez provided no support for his opinion, which was sought by the claimant so she could participate in a 5 week internship as part of her schooling. The undersigned concludes that even in June 2015, the combination of the claimant's three pain generators would have prevented her from engaging in medium work. *The undersigned finds persuasive the opinion that the claimant could sit for 75 percent of the work day*. While the opinion is not supported by Dr. Martinez's findings but was sought out by the claimant instead, *the medical record suggests that sitting for 6 hours in an 8 hour work day was the most the claimant could do despite her subjective complaints and objective findings based upon her three severe impairments as discussed above. The undersigned finds the remainder of the opinion is not persuasive.* In this instance, the physical demands of the job the claimant would be performing were presented to Dr. Martinez and while he may have checked off certain boxes to identify her limitations, the limitations provided fit the profile of the job the claimant wished to undertake as an intern, not the most that the claimant could do despite her subjective complaints and objective findings (SSR 96-8p). Further, the claimant improved with treatment including the use of medications, surgery and other care she received as described above. As noted there, she was undergoing little significant treatment in 2015 when this opinion was formed.

R. 38 (emphasis added).

Plaintiff argues that the ALJ's finding that Dr. Martinez's opinion that Plaintiff could sit for 75 percent of the work day is inconsistent with the ALJ's RFC for light work. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 22. Plaintiff goes on to argue that the ALJ's finding persuasive evidence supporting a sedentary RFC is "critical to this Plaintiff given she was 49 years and 7 months at the Date Last Insured[,]" arguing that a sedentary RFC would have required a finding that she was disabled according to Medical Vocational Rule 201.14. *Id.* at 22–23. The Acting Commissioner responds that, even reading Dr. Martinez's form as the most that Plaintiff could do, it is not "inconceivable" that Plaintiff could sit for no more than six hours in an eight-hour workday and be capable of walking or standing for up to six hours in a work day. *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 15, p. 23. In support of this position, the

14

Acting Commissioner notes that Dr. Martinez checked two separate boxes marked "26-50%" for standing and for walking, indicating that Plaintiff may need to be on her feet all day. *Id*. (citing R. 819). The Acting Commissioner further notes that Dr. Martinez found that Plaintiff is capable of a job that may involve lifting up to 50 pounds and that he also found Plaintiff "physical[ly] fit and capable of meeting the demands that the job requires[.]" R. 819. The Acting Commissioner therefore argues that Dr. Martinez's findings in this regard "plainly exceed[] sedentary work." *Id*. (citing 20 C.F.R. § 404.1567(a)).

The Acting Commissioner's arguments are not well taken. It is true that Dr. Martinez's assessment also reflects his opinion that Plaintiff could stand "26-50%" of the time and walk "26-50%" of the time as well as lift/lower up to fifty pounds. R. 819. However, the ALJ found persuasive only the portion of the opinion indicating that Plaintiff could sit for 75 percent of a work day; the ALJ expressly stated that "*the remainder of the opinion is not persuasive*." R. 38 (emphasis added). In other words, the ALJ rejected all other portions of Dr. Martinez's opinion, including, *inter alia*, the opinion that Plaintiff could stand for 26-50% of the time, walk for 26-50% of the time, and lift/lower up to fifty pounds. *Id*. However, the ALJ never explained how long Plaintiff could stand or walk in a work day. *See generally* R. 28–38. The Court is therefore left with the ALJ's finding persuasive that Plaintiff could sit up to 75% of the time and the ALJ's finding that "*the medical record* suggests that sitting for 6 hours in an 8 hour work day *was the most the claimant could do* despite her subjective complaints and objective findings based upon her three severe impairments [fibromyalgia, lumbar degenerative disc disease, and cervical impairments] as discussed above." *Id*. (emphasis added). However, as set forth above, the ALJ determined that, subject to certain limitations, Plaintiff was capable of performing light work, which involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . *[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added). More specifically,

[t]he regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. *A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.* 'Frequent' means occurring from one-third to two-thirds of the time. *Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.* Sitting may occur intermittently during the remaining time."

SSR 83-10 (emphasis added); *see also Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 119 (3d Cir. 1995) ("The Secretary has further explained this definition [of light work in the DOT] in Social Security Ruling 83-10 by stating that light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day."). Because the ALJ, based on "the medical record," found that "the most" Plaintiff "could do despite her subjective complaints and objective findings" was "sitting for 6 hours in an 8 hour work day[,]" it is unclear to the Court why the ALJ determined that Plaintiff was capable of light exertional work. *See* 20 C.F.R. § 404.1567(b); SSR 83-10. Without further explanation, the ALJ's findings in this regard are apparently inconsistent with her RFC determination for light work. *See* R. 28−38.

16

Nor can the Court conclude that such an error is harmless. It is true that work may also be classified as light if it requires an ability to sit most of the day but with an ability to engage in some pushing and pulling of arm or leg controls, such as mattress sewing machine operator, motor-grader operator, and road-roller operator. *See id*. In the present case, however, the vocational expert never identified any of those three jobs as jobs that could be performed by someone with Plaintiff's RFC. R 64–67. Nor did the ALJ ask whether the jobs identified by the vocational expert required such ability. *Id*. Specifically, the ALJ presented a hypothetical with an RFC for light work with certain additional postural, manipulative, environmental, and mental limitations. R. 28, 64–66. The vocational expert identified jobs that he characterized as light and unskilled, *i.e.*, hand packager, assembler, and information clerk. R. 66–67. As a preliminary matter, however, the position of hand packager, which the vocational expert explained is "also classified as a bagger in the . . . DOT[,]" R. 66, is a medium exertional job, not a light exertional job. *See* Dictionary of Occupational Titles, § 920.587.018[5] (hand packager; "[m]ay be designated: Bagger (any industry)"). As to the two remaining jobs identified  by the vocational expert—*i.e.*,  assembler and information clerk—the ALJ never asked or clarified whether either of those jobs permitted an individual to sit for six hours in an eight-hour workday and required some pushing and pulling of arm or leg controls. *See generally* R. 64–67. Accordingly, there is no vocational expert testimony that either of those light jobs would permit standing or walking for only two hours rather than six hours in an eight-hour workday. *See id*.; *see also* SSR 83-10 ("Relatively few unskilled light jobs are performed in a seated position.").

Notably, as Plaintiff argues, whether she is limited to light exertional work or sedentary work is outcome determinative of whether she is disabled. *Plaintiff's Memorandum of Law*, ECF

---

[5] The vocational expert listed the wrong DOT number for hand packager/bagger. R. 66.

No. 14, pp. 23−24; R. 57 (arguing at the second hearing that Plaintiff's age renders her disabled if limited to sedentary work under Medical Vocational Rule 201.14), 60 (same). When deciding whether a claimant is disabled, a court will consider the claimant's chronological age in combination with his or her RFC, education, and work experience. 20 C.F.R. § 404.1563(a). In determining the extent to which age affects a person's ability to adjust to other work, a court considers advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment. *Id*. When making a finding about ability to do other work, the court uses age categories that apply to the claimant during the period for which it must determine if the claimant is disabled. *Id*. at § 404.1563(b). As to the age categories relevant to the present case, if a claimant is a "younger person" (under age 50), the Court "generally do[es] not consider that [the claimant's] age will seriously affect [his or her] ability to adjust to other work. However, in some circumstances, [the Court] consider[s] that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45." *Id*. at § 404.1563(c). However, if a claimant is "closely approaching advanced age" (age 50–54), the Court will consider that the claimant's age along with a severe impairment(s) and limited work experience "may seriously affect" the claimant's ability to adjust to other work. *Id*. at § 404.1563(d). Notably, a court "will not apply the age categories mechanically in a borderline situation;" if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled," the court will consider whether to use the older age category after evaluating the overall impact of all the factors of the claimant's case. 20 C.F.R. § 404.1563(b); *see also* Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Table 1, Appendix 2; *Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) (explaining that the Medical-Vocational Guidelines are also known as the "grids," which

"are 'rules' which are used to direct conclusions of 'disabled' or 'not disabled' based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy)") (citations omitted).

In this case, Plaintiff was 49 years and 7 months old on September 30, 2015, the date on which she was last insured. R.17 (reflecting a date last insured of September 30, 2015), 39 (reflecting Plaintiff's date of birth and noting further that Plaintiff "subsequently changed age category to closely approaching advanced age). Accordingly, Plaintiff was five months away from the age category of "closely approaching advanced age," which would have rendered her disabled if she were limited to sedentary work. 20 C.F.R. Part 404, App'x 2, Grid Rule 201.14 (applying to claimants limited to sedentary work and directing a finding of "disabled" for claimants who are closely approaching advanced age and who are a high school graduate or more, whose education does not provide for direct entry into skilled work, and whose previous work was skilled or semiskilled with skills not transferable). Based on this record, where the ALJ's articulated limitations—that the most Plaintiff could do was sit for six hours during a workday—do not match the RFC, vocational expert testimony does not establish that Plaintiff could perform the identified upon which the ALJ relied when denying benefits at step five, and where Plaintiff's borderline age could possibly change the outcome of the disability determination, the Court concludes that it must remand this action for further proceedings. *See Schneider v. Comm'r of Soc. Sec.*, No. CV 21-4150, 2022 WL 3280109, at *5 (E.D. Pa. Aug. 11, 2022) (remanding where the claimant was 5 months and 8 days shy of reaching the next age category) (citations omitted);[6] *Patlakh v. Kijakazi*, Civ. No. 20-4501, 2021 WL 5762497 at *7

---

[6] The *Schnieder* court goes on to explain further borderline age considerations as follows:

19

(E.D. Pa. Nov. 17, 2021), *report and recommendation adopted*, 2021 WL 578999 (E.D. Pa. Dec.

3, 2021) (finding remand required where ALJ failed to apply borderline age analysis for claimant

who was between five and six months from reaching age 55).[7]

---

> In *Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005), the Third Circuit, in a non-precedential opinion, declined to require borderline age consideration be given to a claimant who was between five and six months of the desired age category. *The court noted that there was an absence of authority to define borderline age as more than five months from the next desired age category. Id.* at 420. Following *Roberts*, many district courts in the circuit were disinclined to remand for a borderline age consideration where the claimant was more than five months from reaching the next age category and where there was other evidence suggesting that the claimant's age was not a factor that significantly limited his or her vocational adaptability. *See, e.g.*, *Holland v. Comm'r of Soc. Sec.*, Civ. A. No. 10-1019, 2012 WL 11052 at *1 (W.D. Pa. Jan. 3, 2012) (citing *Roberts* to find no borderline age situation where the claimant was five months from reaching an older age category but refusing to create a per se rule).

*Id.* at *4 n.4 (emphasis added). "In 2016 and 2017, however, [more than 10 years after *Roberts* was issued,] the Commissioner issued new guidance for its adjudicators, and specifically ALJs, on the borderline age analysis." *Id.* at *4 (citing Hearings, Appeals, Litigation and Law ("HALLEX") I-2-2-42(B), (C); Program Operations Manual System ("POMS") § DI 25015.006B, 25015.006C). "Since this internal guidance to adjudicators became effective, courts nationally have been more willing to accept six months as the outer limit on proximity to the next age category, and to require consideration when a claimant age is within that range." *Id.* (collecting cases).

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's RFC determination and borderline age, the Court need not and does not consider those claims. However, the Court notes that this Court has recently rejected one of Plaintiff's counsel's arguments, *i.e.,* the constitutionality of the appointment of the Acting Commissioner. *See Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted). This Court has also previously rejected similar constitutional challenges to the Acting Commissioner's appointment raised by other counsel. *See John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12 (D.N.J. Aug. 25, 2022) ("The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid."); *Sheree J. v.*

## V.      CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 29, 2022                              *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE

---

*Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug. 9, 2022) (same); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.").